KELLER v. N. O. PUB. SERVICE, INC.

---

(December 14, 1931. Opinion and Decree.)

---

J. Rosenberg and Woodville & Woodville, of New Orleans, attorneys for plaintiff, appellant.

Ivy G. Kittredge, of New Orleans, attorney for defendant, appellee.

HIGGINS, J. This is an action ex delicto by a pedestrian to recover damages for personal injuries, loss of earnings, medical expenses, etc., said to have resulted when a street car of defendant company ran into and knocked him down at the intersection of Rampart and Canal streets, this city, on April 2, 1930, at 11:15 a. m.

The petition alleges that defendant was at fault in operating the car at an excessive rate of speed; that the motorman did not keep a proper lookout; that the street car approached plaintiff from the rear and suddenly ran him down without giving any signal or warning of its approach; and that plaintiff had the right of way as the green semaphore light was in his favor; and that the motorman violated the provisions of section 14 of Ordinance 7490, C. C. S., by turning into the intersection against a red light.

Defendant denied the respective charges of negligence, and specially pleaded that plaintiff was guilty of contributory negligence in walking into the side of the street car.

318

There was judgment in favor of defendant dismissing the suit, and plaintiff has appealed.

The record shows that plaintiff was walking on the uptown river sidewalk of Canal street in the direction of the lake; that upon reaching the intersection of Rampart street he started to cross to the lower side of Canal street when the green traffic signal was in his favor; that the street car which was proceeding towards Canal street on Rampart street came to a stop on the uptown side of Canal street, where passengers were received and discharged; that the street car then started across the intersection as the green traffic light showed in its direction; that South Rampart and Canal streets intersect each other at right angles, and both have neutral grounds in the center on which are located street car tracks with paved roadways on each side thereof; that the track on which the street car was proceeding turned from South Rampart street across the uptown roadway of Canal street to the neutral ground on Canal street and thence on the neutral ground towards the river; that there are lines on the pavement indicating the path pedestrians must pursue in crossing the street; and that this path leads directly over the street car tracks at the point where it reaches the neutral ground.

We shall first discuss the charge that the motorman attempted to negotiate the crossing on a red light and contrary to section 14 of the traffic ordinance. Section 14 reads as follows:

"*Police Semaphore Signals.* The following semaphore signals for the movement of traffic are hereby established.

"(a) Red—when shown on any traffic signal, illuminated or otherwise, shall indicate that traffic shall stop, and remain stopped as long as the red signal is shown.

"(b) Green—when shown in any traffic signal illuminated or otherwise, shall indicate that traffic shall move in the direction of the signal, and remain in motion as long as the signal is shown."

Plaintiff contends that the street car, under the provisions of paragraph (b) of the above-quoted section, should have proceeded into the curve as long as the street car was facing the green semaphore signal, but, when it started to turn towards the neutral ground so that the street car then began to face the red light, it should have stopped, since the motorman was then confronted with the red light which required him to stop.

The record shows that there was no place where the street car could have stopped, upon approaching the neutral ground after the car had negotiated enough of the curve so that the motorman could have seen the red light, and that, had the motorman stopped at such a point, as the street car was 47 feet in length and the roadway was 38 feet in width, the car would have blocked both vehicular and pedestrian traffic in the intersection.

There is no doubt under the language of the ordinance that the street car had a right to leave Rampart street and turn into Canal street because it was moving in the direction of the green signal, which directed traffic to move in the direction of the neutral ground. The street car had a right to remain in motion until it completed the crossing. The mere fact that in reaching the neutral ground it was necessary for the street car to diagonally cross the path of pedestrians did not deprive the car of its right to continue on its course, since it was proceeding on a green light. Furthermore, the street car would not be completely confronted with

the red traffic light until it reached the neutral ground because the traffic lights are set at right angles. We are fortified in our conclusions by the testimony of the traffic officer who was directing traffic at that point in accordance with the instructions of the officials of the traffic department of the city. He states that, when the green light showed towards Rampart street, pedestrians and automobiles had a right to cross Canal street, and that automobiles and street cars turning from Rampart street into Canal street and going in the direction of the river or to their right were required to negotiate the turn when the green semaphore light thus showed in their favor.

The interpretation contended for by plaintiff would lead to serious traffic congestion, fraught with danger to both drivers of vehicles and pedestrians, whereas the interpretation which we have placed upon the provisions of the traffic ordinance leads to a practicable result, and eliminates, as far as possible under the circumstances, traffic dangers and hazards. We find plaintiff's position untenable.

Turning our attention to the other charges of negligence, we observe that plaintiff testified that as he started to cross the street he noticed the traffic signal was in his favor, and, as he neared the neutral ground, he looked towards his right and left to see if any traffic was approaching; that when he was about in the middle of the tracks he noticed the street car approaching from his left rear side and about one foot from him; that the gong was not sounded; that the front of the car struck him on his left elbow, jamming it into his side and breaking his eighth rib, then throwing him violently to the ground on his right side, causing a compound fracture of his right arm, and that the force of the impact threw him from between the tracks on the neutral ground; that the street car did not stop until it had entirely passed him; that neither the motorman nor the conductor got off the car to make any inquiries as to his injuries; and that he was taken to his hotel and thence to the hospital, where he was treated.

Plaintiff then placed on the stand the traffic officer who was directing traffic from the neutral ground in the center of the intersection. He testified that the traffic light was green in favor of the street car and that it had a right to cross the intersection at the time that it did; that the gong was sounded; that the car came along at a speed of about six or eight miles per hour; that his attention was attracted by the car suddenly coming to a stop; that he did not see the car strike plaintiff, but immediately rushed over to where the plaintiff was, which was three or four feet from the neutral ground in the uptown roadway of Canal street, and assisted him to his feet; that the motorman and conductor also came to the assistance of the plaintiff; that the car stopped with its rear portion in the part of the street provided for pedestrians and in the curve; that, in accordance with the usual practice of directing traffic at that point, the street car had the right of way.

The motorman and conductor testified substantially that, when the street car reached Canal street, the red traffic light was showing; that passengers boarded and alighted from the car; that when the green light came on the car slowly started across the intersection and around the curve, the motorman sounding his gong as a warning to pedestrians and drivers of vehicles; that

plaintiff was not walking in the path provided for pedestrians to cross the street, but was walking diagonally across the street in the direction of the path and towards the neutral ground; that two young men who were just ahead of plaintiff and who were going across to the lower side of Canal street stopped in order to permit the car to pass; that they assumed plaintiff would do likewise; that at that time plaintiff was eight or ten feet from the street car, and that thereafter they heard a thud somewhere around the center of the right side of the car, and a woman passenger in the car screamed; that the motorman immediately applied his air brakes, and that the conductor almost simultaneously gave the emergency stop bell; that the car stopped within a distance of eight feet; that they got off the street car and ran to plaintiff; that they attempted to secure the names of witnesses, but that the bystanders refused to give their names as well as the woman passenger who screamed. The motorman testified positively that plaintiff was not on the tracks and was not struck by the front portion of the car, but that plaintiff apparently did not see the car or misjudged the hang-over and was struck by the side of the car as it rounded the curve.

Defendant also produced the switch tender who was stationed on the neutral ground in the intersection. He, like the policeman, did not see the actual impact due to the fact that he was on the other side of the street car. His testimony corroborates that of the motorman, conductor, and policeman as to the slow speed of the car, the sounding of the gong, and the stopping of the street car almost instantly with its rear end still in the curve. He further stated that plaintiff was knocked down in the roadway three or four feet from the neutral ground.

We have reached the conclusion that the preponderance of the evidence shows that the street car went over when the green traffic signal was in its favor; that it was going at a moderate rate of speed; that the gong was being sounded as it rounded the curve; that plaintiff was knocked down by the right side of the car and not by the front portion of it; and that the motorman was keeping a proper lookout and operating his car with due caution and care, and was therefore free from fault. This was the conclusion of the learned trial judge, and the record clearly justifies his finding.

But, assuming that the motorman was guilty of negligence, plaintiff's right to recover would be barred by his own contributory negligence because he admitted that he made no attempt to look for traffic coming from his left until he was near the neutral ground. He further insisted that he had the right of way over the street car and that it should have stopped in order to have let him pass. Since plaintiff, a pedestrian, and the street car were both proceeding across the intersection on a green light, in accordance with the provisions of the traffic ordinance, the street car had equal rights with plaintiff to negotiate the intersection, and both the motorman and the pedestrian were obliged to exercise ordinary care, prudence, and caution in crossing the intersection, so as to not be injured or cause damage or to injure any one else. We feel that plaintiff failed to keep a proper lookout and depended entirely and solely upon the green light in his favor, disregarding vehicular traffic which had equal rights in the intersection at the time when he crossed, and that his negligence contributed to the accident.

For the reasons assigned, the judgment appealed from is affirmed.